UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| MIGUEL CHARLES JOYNER, | Case No. 1:15-cv-00472-BLW |
| Plaintiff, | MEMORANDUM DECISION AND ORDER |
| v. | |
| SGT. B. CHRISTON, TERRIE ROSENTHAL, CLINTON E. BLAKE, JESSE HALL, SGT. MELODEE ARMFIELD, RANDY BLADES and IDAHO DEPARTMENT OF CORRECTION, | |
| Defendants. | |

## INTRODUCTION

Before the Court is Defendants Terrie Rosenthal, Clinton Blake, and Randy Blades' Motion for Summary Judgment (Dkt. 23). For the reasons explained below, the Court will grant the motion.

## FACTS

Plaintiff Miguel Joyner is an inmate in the custody of Idaho Department of Corrections. On December 1, 2013, another inmate reported that he had been assaulted by the only two black inmates on the tier at the time – Joyner and Spellmeyer. Joyner says he was involved in the altercation but denies being an aggressor; he says he simply attempted to stop Spellmeyer from attacking the victim.

Joyner and Spellmeyer each received Disciplinary Offense Reports ("DORs"). Defendants have testified that it is their practice to issue DORs to everyone involved in a physical altercation except the victim. Before the DORs were issued, a correctional officer investigated the incident, which included interviewing the victim and a witness. Both the victim and the witness identified Joyner as one of the assailants. Accordingly, a DOR was written up, and Defendant Officer Clinton Blake delivered it to Joyner.

On December 20, 2013, a DOR hearing was conducted. The hearing officer confirmed Joyner's DOR and imposed sanctions of 10 days' detention, 30 days' commissary restriction, and 30 days' recreation restriction. None of the three defendants (Blake, Rosenthal, and Blades) were involved in the DOR hearing, but Defendant Terrie Rosenthal reviewed the DOR after the hearing. In her capacity as the Administrative Review Authority, Rosenthal had authority to affirm, modify, or dismiss the DOR. She affirmed Joyner's DOR and the sanctions, concluding that evidence supported the DOR and that the sanctions Joyner received were consistent with sanctions imposed upon other inmates for similar offenses.

Joyner appealed to Defendant Warden Randy Blades, who also affirmed the DOR. Shortly afterward, Keith Yordy replaced Blades as the warden. Joyner approached Yordy and asked him to dismiss the DOR. Yordy initially modified the DOR to a Class C offense (from a Class B offense) and subsequently dismissed it entirely.

In October 2015, Joyner sued. He alleges that the DOR was issued to him because he was black – not because he did anything wrong. He also says the DOR was issued as part of defendants' campaign of harassment against him.

## PROCEDURAL HISTORY

In his original and first amended complaint, Joyner alleged that in addition to receiving a DOR for the December 1, 2013 incident, he received additional DORs during 2011 through 2013. *See Compl.*, Dkt. 3; *Am. Compl.,* Dkt. 15. Joyner says each of these DORs is factually baseless and that, taken as a group, the DORs show defendants subjected him to a campaign of harassment.

In earlier orders, however, the Court held that Joyner had not sufficiently alleged facts linking the DORs and that Joyner's complaints regarding these earlier DORs were time barred. *Successive Review Order,* Dkt. 16, at 6. Joyner was thus allowed to proceed only as to the December 2013 DOR, though the Court indicated that Joyner could file an amended complaint if he later learned of facts that would "support his earlier claims and his claims of a continuing tort." *See id.* at 7-8.

Joyner did not subsequently amend his complaint, and he has not otherwise come forward with any additional facts demonstrating that the various DORs are factually linked such that they support his continuing tort/campaign of harassment theory. Accordingly, in this Order, the Court will address only the December 2013 DOR.

## LEGAL STANDARD

Summary judgment is appropriate where a party can show that, as to any claim or defense, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). One of the principal purposes of the summary judgment "is to isolate and dispose of factually unsupported claims...." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). There must be a genuine dispute as to any

material fact—a fact "that may affect the outcome of the case." *Id.* at 248.

The evidence must be viewed in the light most favorable to the non-moving party, and the Court must not make credibility findings. *Id.* at 255. Direct testimony of the non-movant must be believed, however implausible. *Leslie v. Grupo ICA*, 198 F.3d 1152, 1159 (9th Cir. 1999). On the other hand, the Court is not required to adopt unreasonable inferences from circumstantial evidence. *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

The moving party bears the initial burden of demonstrating the absence of a genuine dispute as to material fact. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc). To carry this burden, the moving party need not introduce any affirmative evidence (such as affidavits or deposition excerpts) but may simply point out the absence of evidence to support the nonmoving party's case. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 532 (9th Cir. 2000).

This shifts the burden to the non-moving party to produce evidence sufficient to support a jury verdict in her favor. *Deveraux*, 263 F.3d at 1076. The non-moving party must go beyond the pleadings and show "by her [ ] affidavits, or by the depositions, answers to interrogatories, or admissions on file" that a genuine dispute of material fact exists. *Celotex*, 477 U.S. at 324.

However, the Court is "not required to comb through the record to find some reason to deny a motion for summary judgment." *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001) (quotation omitted). Instead, the "party

opposing summary judgment must direct [the Court's] attention to specific triable facts."
*Southern California Gas Co. v. City of Santa Ana*, 336 F.3d 885, 889 (9th Cir. 2003).

## DISCUSSION

### 1.    Equal Protection

Joyner alleges that he received the December 2013 DOR because of his race, but he does not point to any evidence supporting that assertion.

"Prisoners are protected under the Equal Protection Clause of the Fourteenth Amendment from invidious discrimination based on race." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). To state a claim for violation of the Equal Protection Clause, Joyner must show that the defendant acted with an intent or purpose to discriminate against him based upon his membership in a protected class. *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir.1998). "Intentional discrimination means that a defendant acted at least in part because of a plaintiff's protected status." *Maynard v. City of San Jose*, 37 F.3d 1396, 1404 (9th Cir. 1994) (emphasis in original) (citation omitted). Thus, to avoid summary judgment, Joyner "'must produce evidence sufficient to permit a reasonable trier of fact to find by a preponderance of the evidence that [the] decision . . . was racially motivated.'" *Bingham v. City of Manhattan Beach*, 341 F.3d 939, 949 (9th Cir. 2003) (citation omitted), *overruled on other grounds by Edgerly v. City & Cnty. of San Francisco*, 599 F.3d 946, 956 n.14 (9th Cir. 2010).

Joyner has not made this showing. Nothing in the record indicates that the December 2013 DOR was racially motivated. Joyner was involved in the altercation – even crediting his assertion that he was only attempting to assist the victim – and two

other inmates (the victim and a witness) said Joyner was an assailant. Prison employees have testified without contradiction that it is their practice to issue DORs to everyone involved in a physical assault except the victim. Prison employees also have stated that DORs will often be dismissed if it is later determined that an inmate was defending himself. Here, Joyner's DOR was eventually dismissed (after Warden Yordy replaced Warden Blades), even though there was conflicting evidence as to the level of his involvement.

Joyner also has not come forward with more general evidence establishing that defendants mete out sanctions at the prison to black inmates in numbers which are disproportionate to those issued to white inmates. *Cf. Santiago v. Miles,* 774 F. Supp. 775, 786-87 (W.D.N.Y. 1991) (evidence showed that black inmates received 4.87 misbehavior reports per inmate while white inmates received only 2.99 per inmate). Rather, Joyner appears to be relying solely on the fact that he and Spellmeyer are black. He put it this way in his amended complaint:

> The complaint of Equal Protection falls where only two black men live on the same tier. One was beating the guy up the other was trying to stop it! When the smoke cleared both black men went to seg. Clearly this falls under Equal Protection. The facts are all here.

*Am. Compl.*, Dkt. 15, at 10 (some capitalization added). For the reasons explained above, these facts are not sufficient to support an Equal Protection claim, and Joyner has not come forward with any additional evidence in responding to the pending motion. The Court will therefore grant summary judgment in defendants' favor on this claim.

### 2.    Calculated Harassment

The Court will also grant summary judgment in defendants' favor on Joyner's harassment claim.

A pattern of maliciously motivated conduct or calculated harassment unrelated to prison needs may constitute cruel and unusual punishment, even if isolated incidents of such conduct would not violate a prisoner's rights. *See Hudson v. Palmer*, 468 U.S. 517, 528-30 (1984). Here, as noted above, although Joyner attempted to string together a series DORs to demonstrate a campaign of harassment, he failed to demonstrate that these DORs are factually linked. As such, he is left with a single event – the December 1, 2013 DOR.

A single, isolated event cannot support a claim that defendants engaged in a *campaign* of harassment. *See id.* Further, as already explained, issuance of the December 2013 DOR to Joyner was not baseless. Joyner's harassment claim thus fails.

### 3.    Discovery Issues

Finally, in opposing this motion, Joyner reports that defendants were eleven days late in providing their initial disclosures. He also says defendants provided only 63 pages in their initial disclosures, but then came forward with 101 pages of materials (including declarations) supporting the pending motion for summary judgment. He asks the Court to (1) exclude the evidence that was provided to him and (2) allow him to conduct additional discovery. The Court will deny both requests.

The Court will not exclude evidence produced to Joyner solely because it arrived 11 days late. If this delay – which occurred several months ago – had some impact on

Joyner's ability to pursue his case, the Court would have granted a corresponding extension or some other form of appropriate relief. In fact, the Court did grant Joyner's motion for a 60-day extension to respond to this motion, and the defendants did not oppose Joyner's request. *See July 6, 2018 Order,* Dkt. 27; *Defendants' Non-Opposition to Request*, Dkt. 26. Joyner has not persuaded the Court that any additional extensions or sanctions would be appropriate.

Second, the Court is not convinced that defendants' initial disclosures were incomplete simply because defendants reportedly submitted 101 pages worth of materials to support their motion, compared to the 63 pages they provided earlier. Among other things, defendants' summary-judgment materials include several pages of declarations. Declarations would not have been produced as part of an initial disclosure. *See* Fed. R. Civ. P. 26(a). That alone may explain the page differential.

But more generally, after having considered all Joyner's arguments related to his alleged need to conduct additional discovery, *see* Dkt. 28, at 2-5; Dkt. 31, at 1-2, the Court is not persuaded. The discovery deadline has long since passed, and Joyner has not shown good cause to extend it. *See* Fed. R. Civ. P. 16(b); *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604 (9th Cir. 1992). Further, even assuming the deadline had not passed, Joyner has not precisely explained how the evidence he seeks to discover might create a triable issue of fact. *See generally Hicks v. Johnson*, 755 F.3d 738, 743 (1st Cir. 2014) (district court may deny Rule 56(d) motion "if it concludes that the party opposing summary judgment is unlikely to garner useful evidence from supplemental discovery"). The Court will therefore deny his request for discovery sanctions and will

deny his motion to conduct additional discovery.

**ORDER**

**IT IS ORDERED that:**

(1) Defendant's Motion for Summary Judgment (Dkt. 23) is **GRANTED.**

(2) Plaintiff's Motion for Discovery (Dkt. 31) is **DENIED.**

(3) Plaintiff's "Motion for and or Stipulation for Alternative Dispute Resolution

   (ADR)" (Dkt. 32) is **DEEMED MOOT.**

(4) The Court will enter judgment separately.

DATED: November 13, 2018

B. Lynn Winmill
Chief U.S. District Court Judge